# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:05CV256-H

| | |
|---|---|
| **DEBORAH C. OSBORNE,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief Supporting ..." (document #11), both filed March 10, 2006; and Defendant's "Motion For Summary Judgment" (document #12) and "Memorandum in Support of the Commissioner's Decision" (document #14), both filed May 9, 2006. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will deny Plaintiff's Motion for Summary Judgment; grant Defendant's Motion for Summary Judgment; and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

On February 6, 2004, the Plaintiff filed an application for a period of disability and Social Security Disability Benefits ("DIB"), alleging she was unable to work as of July 28, 2003 due to

chronic leg pain. The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on November 18, 2004. On January 26, 2005, the ALJ issued a decision denying the Plaintiff's claim because she did not suffer a "severe impairment" as that term is defined for Social Security purposes. The Plaintiff subsequently filed a timely Request for Review of Hearing Decision. On July 22, 2005, the Appeals Council denied the Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on September 28, 2005, raising a single issue on appeal: whether the ALJ should have found that edema, that is, swelling, in her right leg amounted to a "severe impairment" as that term is defined for Social Security purposes. The parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

Relevant to the present appeal, the Plaintiff was 53 years old at the time of the hearing, had graduated from high school, and had relevant work experience as a warehouse worker, a trainer at a large hardware distribution center, a receiving clerk, and an assistant manager of a retail store.

The Plaintiff testified at the hearing that her trainer and clerk jobs required frequent lifting of 35 and 50 pounds, respectively; that she had a long history of leg pain, which prevented her from working; that in 2001, she underwent surgery to remove a varicose vein in her right leg; that she continued to have "sharp pains" and numbness in her legs if she was on her feet "a lot"; that she could stand about two hours, but then had to sit and elevate her legs; that she could walk one-quarter of a mile; that she also suffered neck and hand pain; that the only medication she took was 500 mg. of aspirin each day, which helped relieve at least some of her pain; that she drove a car and went

shopping; that she did household chores including "picking up" the house, washing dishes, and washing and ironing clothes; and that she spent most of each day watching television.

In assessing the claimant's residual functional capacity ("RFC"), medical experts for North Carolina Disability Determination Services ("NCDDS") opined that the Plaintiff could perform medium exertional work, that is, that she could lift and carry 25 pounds frequently and 50 pounds occasionally, could sit, stand, and/or walk for about 6 hours in an eight-hour workday, and had no limitations in pushing or pulling; and that she had no nonexertional limitations.

With the exception of one additional sentence from the notes of Dr. Henry Igdal, M.D., which is discussed below, the Plaintiff has expressly adopted the ALJ's recitation of her medical records. Moreover, the Court has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The medical evidence of record reveals that Ms. Osborne was treated for symptomatic varicose veins by vascular surgeon DeMar A. Neal, M.D., on 2001. He surgically removed a vein in her right leg on August 20,2001 and noted that she was completely recovered by October of 2001 (Exhibits 3F, 4F, 9F).
>
> Ben C. Bowen, M.D., is the claimant's treating physician. His office notes document a visit on March 30, 2003, at which the claimant complained of pain in her right leg. Dr. Bowen diagnosed thrombophlebitis, and prescribed Motrin and hot compresses (Exhibit 2F, page 7). On April 22, 2003, his notes indicate that the claimant reported her leg was feeling much better and that the leg appeared much improved even though a 3 inch clot remained in the medial area of her right thigh (Exhibit 2F). The claimant reported no significant problems at her annual physical on February 4, 2004 (Exhibits 2F and SF).
>
> Henry Igdal, M.D., performed a consultative examination of the claimant on April 16, 2004 (Exhibit 3F). Ms. Osborne complained of swelling of her veins and blood clots in her right leg, due to a long history of intermittent bouts of phlebitis. Dr. Igdal noted that she had never been hospitalized; required heparin or coumadin; and had never been diagnosed with deep venous thrombosis. Her only medication at that time was 325 mg. of aspirin a day. His physical examination revealed that she ambulated well and required no assistance. She could squat and return without assistance. She had no

difficulty balancing on her heels and toes. Her upper extremities were symmetric and had normal tone and bulk. She had full range of motion in all upper extremity joints and normal strength. In her lower extremities, Dr. Igdal documented numerous superficial varicosities, right leg more involved than left. He noted there *was* no evidence of active thrombophlebitis. His neurological examination was normal. He noted she had some trade edema in the right lower extremity. He also noted that given her history of circulatory problems, her continued use of cigarettes constituted high risk behavior. He noted there was no evidence of vascular or neurologic compromise of other extremity (Exhibit 3F). He ordered an Arterial Doppler study of both of her lower extremities, which was normal and revealed no evidence of any significant arterial obstructive disease (Exhibit 4F).

Ms. Osborn [sic] returned to Dr. Bowen on May 26, 2004, complaining of a stiff neck and that both her hands were frequently numb. Dr. Bowen's examination revealed a fill range of motion and a minimal tremor of the hands, right more than left (Exhibit SF). He ordered an x-ray of the cervical spine, which documented degenerative disk narrowing with anterior and posterior spondylosis at C5-6 and mild narrowing at C6-7 with focal spurring. It also revealed bilateral neural foraminal encroachment at C5-6 and C6-7 (Exhibit SF. page 21). These findings prompted a MRI of the cervical spine, which revealed a broad-based disk osteophyte complex at *C5-6,* accentuated in the mid-line and right paramidline position with slight cord impingement and mild narrowing of the right neural foramen. A broad-based, but shallower posterior disk osteophyte was noted to protrude at the C6-7 level without evidence of cord impingement or neural foraminal narrowing (Exhibit SF, page 20).

Dr. Bowen referred the claimant to neurosurgeon Kenneth E. Wood, M.D., who examined the claimant on July 22, 2004. Dr. Wood reviewed the diagnostic studies and prescribed a course of steroids and physical therapy (Exhibit *SF).* The claimant was seen at physical therapy on two occasions. At her intake appointment, it was noted that she bad "reasonably good" cervical range of motion with rotation to 55~ on the right and 600 on the left. She complained of some popping and crepitus during the evaluation. Her flexion, extension, and side bending were all functional. She was neurologically intact and demonstrated moderate forward posture (Exhibit 9F).

(Tr. 45-46.)

In her brief, the Plaintiff points out that Dr. Igdal also stated concerning the Plaintiffs' right leg, that "she has some trace edema and occasional exacerbation of edema, which is to be expected in this

extremity."[1] (Tr. 152.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals, contending that Dr. Igdal's note concerning right leg edema was sufficient to support that the Plaintiff suffered a severe impairment.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a con-

---

[1] In medical terms, a designation of "trace" means the evidence of former existence, influence or action of a phenomenon or event or an extremely small amount or barely discernible indication of something. Stedman's Medical Dictionary, 1851 (27th ed. 2001).

5

clusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[2] The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that neither the Plaintiff's thrombophlebitis nor her "mild" cervical disc disease were severe impairments within the meaning of the Regulations; that the Plaintiff had not established the existence of any other severe impairments; and that, therefore, she was not disabled

---

[2]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

6

On appeal, the Plaintiff maintains that the ALJ erred when he concluded that the swelling in her right leg was not a severe impairment, but does not contend that the alleged impairment rendered her disabled or unable to perform medium work as Agency evaluators had determined. See Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief Supporting ..." (document #11). Moreover, the undersigned finds that there is substantial evidence supporting the ALJ's conclusions concerning the Plaintiff's alleged impairments and his ultimate determination that the Plaintiff was not disabled.

The "severity regulation," 20 C.F.R. §404.1520, is applied to screen out de minimus claims. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). An impairment will be considered non-severe if it is only a slight abnormality that would have such a minimal effect on an individual that it would not be expected to interfere with the individual's ability to work. Albright v. Commissioner of The Social Security Administration, 174 F.3d 473, 474 n.1 (4th Cir. 1999), citing Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). Additionally, the Plaintiff bears the burden of proving that her alleged leg impairment is severe enough to significantly limit her ability to perform substantial gainful activity and that it is of disabling severity for 12 months. Barnhart v. Walton, 535 U.S. 212, 218-219 (2002). A physical impairment is considered non-severe when it does not significantly limit a person's ability to perform the basic physical functions of work, such as walking, standing, sitting, lifting, reaching, pushing, pulling, carrying, handling, seeing, hearing or speaking. 20 C.F.R. §404.1521. Here, substantial evidence supports the ALJ's conclusion that the Plaintiff failed to establish a severe impairment.

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited her ability to work. Agency medical experts determined that the Plaintiff had the

residual functional capacity for medium work – could occasionally lift 50 pounds and frequently lift 25 pounds; that she could sit, stand, and/or walk 6 hours in an 8-hour workday; and that her ability to push and/or pull was unlimited – with no nonexertional limitations.

Moreover, no physician ever placed any restrictions on the Plaintiff's activities, much less found that she was unable to work. Indeed, the undisputed medical record reflects that the Plaintiff completely recovered from varicose vein removal in 2001. In March 2003, Dr. Bowen recommended only Motrin and hot compresses to treat Plaintiff's leg pain, and noted in April 2003 that Plaintiff was doing much better. On February 4, 2004, two days before she filed her disability application, the Plaintiff saw Dr. Bowen for a routine physical examination and did not report any problems.

Similarly, although Dr. Igdal recorded a "trace," that is, as noted above, a barely discernable amount, of swelling in the Plaintiff's right leg, he also noted that Plaintiff had never been hospitalized, required blood thinners, or been diagnosed with deep venous thrombosis; that she ambulated well and required no assistance; that she could squat and return to standing normally; that she had no difficulty balancing on her heels and toes; that a neurological examination was normal; and that an Arterial Doppler study of both legs was normal and revealed no evidence of any significant arterial obstructive disease.

The medical record is also clear that the Plaintiff took only aspirin to relieve her leg pain. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

The record is also clear that the Plaintiff engaged in significant daily life activities during the subject period, such as bathing and dressing herself, "picking up" the house, washing dishes, washing and ironing clothes, driving, and shopping. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work," which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for evaluating a claimant's subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's neck, hand, and leg pain and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of her pain, and the extent to which it affects her ability to work," and found Plaintiff's subjective description of her limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between the Plaintiff's claims of inability to work and her objective ability to carry on a moderate level of daily activities, that is, to drive, do housework, and go shopping, as well as the objective medical record discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's determination that the Plaintiff did not suffer a "severe impairment," and, accordingly, was not disabled.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #10) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #12) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: May 9, 2006

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge